[No. 35015-7-II.   Division Two.   September 5, 2007.]

*In the Matter of the Welfare of* B.R.S.H. ET AL.

DANNIE HIGGINS ET AL., *Appellants*, v. JASON EVANS ET AL., *Respondents*.

---

[27] *State v. Dodson*, 110 Wn. App. 112, 120, 39 P.3d 324 (2002).

40

*Bianca Crockett*, pro se.

*Brian L. Meikle* (of *Law Offices of Brian L. Meikle*), for appellants.

*Leslie R. Bottimore* (of *Bottimore & Associates, PLLC*), for respondent Jason Evans.

¶1 PENOYAR, J. — Brenda and Dannie Higgins were awarded full custody of their granddaughter, MRE, in 2001, although both Bianca Crockett (the mother) and Jason Evans (the father) retained limited visitation rights. Four years later, the Higginses filed a petition for relocation. Evans objected and requested that the trial court modify the custody decree in order to give him full custody. In response, the Higginses withdrew their relocation request, but the trial court proceeded with a modification hearing and ultimately granted custody to Evans. The Higginses

now appeal, arguing in part that the trial court erred by using an incorrect legal standard when reviewing Evans's petition for modification. Their argument is persuasive—Washington law requires that, absent a relocation request, the petitioner (Evans, in this case) must show a substantial change in circumstances of the child's current living situation. Here, the trial court required only that Evans show a change in his own circumstances. This is not sufficient to modify a custody decree. We reverse and remand.

## FACTS

¶2 MRE was born to Crockett and Evans in March 1999. By August 2000, she and her half-brother, BRSH, were living with the Higginses (Crockett's parents). At that time, the Higginses filed a nonparental custody petition, alleging that neither Crockett nor Evans was a suitable custodian for the children. A court-appointed guardian ad litem/parenting investigator (GAL/PI) agreed, and she recommended that the children remain in the Higginses' custody with limited visitation with Crockett and Evans. Accordingly, in September 2001, the court granted custody to the Higginses and awarded limited visitation (four hours every other week) to Crockett and Evans.

¶3 Nearly four years later, the Higginses filed a petition for relocation. Evans objected and petitioned the court for modification of the custody decree. In response, the trial court appointed a guardian ad litem (GAL) to investigate MRE's current circumstances with the Higginses and potential living situation with Evans. The GAL interviewed the Higginses and observed the children at their home; he also interviewed Evans and his girlfriend, Tia Harris, at their home. The GAL's preliminary report focused on whether it would be detrimental to relocate MRE to her father's home rather than allow her to relocate with the Higginses.

¶4 The GAL report concluded that it "probably would" be detrimental to MRE to relocate to Montana with her

grandparents; further, "[i]t would not be detrimental to MRE to live with her father, and it could be beneficial if the father gets serious about providing a solid family atmosphere." Clerk's Papers (CP) at 79.

¶5 After the Higginses reviewed the GAL report, they decided not to risk the possibility that MRE would be separated from her half-brother and filed a motion to dismiss their petition for relocation. Evans did not oppose the dismissal, but he asserted that, as the GAL report indicated he was now a fit parent, he wanted to go forward with the request for a change in custody.

¶6 The trial court asked Evans's counsel if she was ready to proceed, and she replied that she was. He then asked the Higginses' lawyer to respond, and he stated:

> With my client's [sic] not wishing to relocate, the Court should now focus on what are the best interests of the child . . . .
>
> There's no evidence that [Evans has] cured the concerns of [the original GAL/PI report]. He certainly did not comply with the drug testing requirements contained therein. And over the course of, well, almost six years since my clients had physical custody of the kids, since August of 2000, he's exercised eight hours of contact with this daughter per month. That's the contact he's had with this child. Yes, he may be the father, may be the genetic father, but he certainly has not stepped into any conceivable role as being the parent, such as Brenda and Dannie Higgins have done who have raised this child from August of 2000, when the child . . . was a year and five months old . . . .
>
> So I think we're almost going to need an additional GAL investigation and probably a psychological investigation of this child to determine who truly does she identify with as the parents in order to determine what is in the best interests of this child - not is it solely is Mr. Evans fit - what's the best interests of the child.

1 Report of Proceedings (RP) at 5, 8-9.

¶7 Evans's counsel then replied, "no, I would say they're not de facto parents, that she does have a parent ready to do

the job, that he's fit, and that it's in her best interests that custody be transferred, so I'd like our petition to go forward." 1 RP at 10-11. She disagreed with the Higginses' request for another GAL and psychological report, arguing that the preliminary GAL report was "extensive and [did] take into account the likelihood that the petitioners might decide not to relocate . . . . I think we have all that's necessary."[1] 1 RP at 11.

¶8 The Higginses' counsel again pointed out that this report was preliminary and did not examine the relationship between MRE and her grandparents. The trial court disagreed with the Higginses' position, stating that another GAL report was not necessary, and it ordered a hearing on the custody modification to begin the next day.

¶9 Following the hearing, the trial court ordered that MRE be placed in Evans's custody, "as her father is a fit parent and it would not be detrimental (and it could be beneficial) to place MRE in the custody of her father." CP at 167. The court also found that (1) the Higginses were not de facto parents, (2) they had not established that Evans was unfit as a parent, and (3) they had not provided a psychological evaluation to show that placing MRE with Evans would result in psychological detriment. It also concluded that the "best interest of the child" standard did not apply in this case because it was a third party custody case, and therefore its application of the parental fitness/psychological detriment standard was correct.

¶10 The trial court awarded full custody to Evans, and the Higginses now appeal.

## ANALYSIS

### I. CONSIDERATION OF EVANS'S PETITION FOR MODIFICATION

¶11 The Higginses argue that the trial court abused its discretion in holding a hearing on Evans's modification

---

[1] The second recommendation of the preliminary GAL report stated, "If the grandparents decide not to relocate, the father should be granted increased residential time. I would still opt for the custody change, as it should be the parent's (if fit) responsibility to raise his child." CP at 80.

request because (1) the Higginses were no longer pursuing relocation and (2) it did not properly consider the factors set out in RCW 26.09.260.

¶12 Evans responds that (1) this issue is not reviewable because the Higginses failed to object to the court's consideration of the petition for modification, and (2) adequate cause for review was not required because the action was originally brought as a relocation action.

¶13 The Higginses reply that they did express their objections to continuing with a hearing on the modification—when the court dismissed the petition for relocation and defense counsel asked to proceed with a hearing on the modification petition, the Higginses requested further investigation before such a hearing. The trial court ruled against them and ordered that the hearing on the modification go forward.

¶14 The general rule is that a party may not raise an issue for the first time on appeal that it did not raise below. RAP 2.5(a); *State v. Moen*, 129 Wn.2d 535, 543, 919 P.2d 69 (1996). By its own terms, however, the rule is permissive and does not automatically preclude the introduction of an issue at the appellate level. *Jones v. Stebbins*, 122 Wn.2d 471, 479, 860 P.2d 1009 (1993). Therefore, we may examine the propriety of the trial court's actions regardless of whether the Higginses properly objected to the trial court's ruling.

¶15 Additionally, the rule's purpose—preserving the error in the lower court—was satisfied here. The attorneys argued about whether they should proceed on the modification request, and while the Higginses did not specifically object to the trial court's ruling, their arguments were thus preserved for appeal.

¶16 Also, as the Higginses argue, the trial court did not consider either RCW 26.10.190 or 26.09.260, and "a statute not addressed below but pertinent to the substantive issues which were raised below may be considered for the first time on appeal." *Bennett v. Hardy*, 113 Wn.2d 912,

918, 784 P.2d 1258 (1990). The two statutory sections the Higginses rely on state that a court shall not modify a prior custody decree unless it finds that a substantial change has occurred in the circumstances of the child or the nonmoving party. RCW 26.09.260; RCW 26.10.190. These statutes are clearly relevant, and the record does not indicate that the trial court considered them before proceeding on Evans's petition for modification. Therefore, review here is entirely appropriate.

¶17 Finally, it serves the best interests of justice and of this child to examine this argument. As set out below, the trial court abused its discretion by applying an incorrect legal standard to the modification petition after the Higginses were no longer pursuing relocation. There was no substantial change of circumstances in MRE's living situation, and there was no cause for a hearing on custody modification. This error changes a child's residential placement and clearly warrants reversal. RAP 2.5(a) is expressly a discretionary rule, and it is well within our discretion to examine the issue.

¶18 We review a trial court's decision regarding a child's placement for abuse of discretion. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. *Kovacs*, 121 Wn.2d at 801.

¶19 Washington law allows a parent objecting to relocation to file a petition to modify the parenting plan "without a showing of adequate cause other than the proposed relocation itself." RCW 26.09.260(6). Ordinarily, in a relocation case, it will not be necessary for the court to consider whether there is a substantial change in circumstances or to consider the factors in RCW 26.09.260(2). *See In re Marriage of Grigsby*, 112 Wn. App. 1, 15, 57 P.3d 1166 (2002).

¶20 In *Grigsby*, as here, the trial court modified a custody decree after a petition for relocation had been withdrawn. On appeal, Division One pointed out that RCW

26.09.260(6) provides that a hearing to determine whether there is adequate cause for the modification is not required "so long as the relocation is being pursued." *Grigsby*, 112 Wn. App. at 16 (citing RCW 26.09.260(6)). The court then concluded that where the custodial parent is no longer pursuing relocation, the parent proposing modification of the parenting plan must show a substantial change in circumstances of the nonmoving parent, considering the factors set out in RCW 26.09.260(2). *Grigsby*, 112 Wn. App. at 16.

¶21 Here, the Higginses were no longer pursuing relocation at the time of the modification hearing. Under *Grigsby*, the court had discretion to hear the modification petition, but it abused that discretion by failing to require that Evans establish a substantial change in circumstances of the nonmoving parent—the Higginses. Therefore, while it was not an abuse of discretion to hear the case, the trial court clearly abused its discretion by applying an incorrect legal standard.

## II. Granting Evans's Petition for Modification

### Legal Standard

¶22 The Higginses argue that the trial court abused its discretion by applying an incorrect legal standard under RCW 26.09.260(2) and by finding a substantial change in circumstance based only on the new circumstances of the moving party. Specifically, they claim that the court applied the standard for an initial determination of custody between a parent and a third party—focusing on the issue of Evans's fitness as a parent—rather than the standard for custody modification, where custody will not change unless the child's present environment is detrimental.

¶23 As stated above, because relocation was no longer being pursued, Washington law requires that Evans establish a substantial change in the Higginses' circumstances in order to proceed on his modification request. *Grigsby*, 112 Wn. App. at 16; RCW 26.09.260(2). Specifically, before

modifying the custody decree, the trial court should have been convinced there was a substantial change in the Higginses' circumstances, considering the factors set forth in RCW 26.09.260(2). *Grigsby*, 112 Wn. App. at 16. RCW 26-.09.260(2) requires a court to retain the residential schedule in the original custody decree unless (a) the parents agree to the modification, (b) the child has been integrated into the petitioner's family with the consent of the other parent, (c) the child's present environment is detrimental, or (d) the court has found the nonmoving parent in contempt of court.

¶24 The record does not show that the trial court considered any of the above before it modified the custody decree. Indeed, instead of finding that MRE's present environment was detrimental, the trial court specifically found that "the [Higginses] provided excellent care to MRE and . . . she has thrived in their care."[2] CP at 168. The trial court focused on the findings that (1) the Higginses had not shown that Evans was an unfit parent, and (2) they had not shown that psychological detriment would result from placing MRE with Evans.

¶25 This was a clear abuse of discretion. The Higginses were not required to show that Evans was an unfit parent, nor were they required to show any psychological detriment. Evans's fitness as a parent was at issue in the original custody hearing in 2001, but it is not determinative here. Under Washington statutes, the burden in a modification hearing is clearly on the moving party (Evans, here) to establish a change in the nonmoving party's circumstances such that it is currently detrimental to retain the current custody decree. RCW 26.09.260(1), (2).

¶26 Evans responds that he has a fundamental liberty interest in raising MRE without state interference, which the Higginses do not possess. He relies on *Smith*, where he

---

[2] The trial court refers to the Higginses as "Petitioners" throughout its findings of fact and conclusions of law, which does reflect confusion as to the procedural posture of the case. The Higginses had dropped their petition prior to the modification hearing, and Evans was therefore the actual "Petitioner."

claims that the Washington Supreme Court recognized only two exceptions to this constitutional right: (1) where the parental decisions directly and severely imperil the child, and (2) where the child has been harmed or there is a threat of harm to the child. *In re Custody of Smith*, 137 Wn.2d 1, 16-18, 969 P.2d 21 (1998).

¶27 The Higginses respond, correctly, that the fundamental right of a biological parent to the custody of his child is highly protected in an initial custody action brought by a nonparent. Indeed, Evans's constitutional rights were taken into account in the 2000-01 third party custody action that originally granted custody to the Higginses.[3] However, that fundamental liberty interest is no longer at issue: "the operating standard for modification [is] a determination based on MRE's best interests, including the presumption that a change of custody is detrimental to the child." Appellants' Reply Br. at 14 (citing RCW 26.10.190(1); RCW 26.09.260; *In re Marriage of McDole*, 122 Wn.2d 604, 859 P.2d 1239 (1993)).

¶28 We disagree with Evans's assertion that the distinction between this case, involving a custody modification, and the initial determination of custody case is immaterial in light of his fundamental liberty interest. Court process protected his constitutional rights before awarding custody to the Higginses; at this point, we view custodial changes as highly disruptive to children and engage a strong presumption in favor of custodial continuity and against modification. *McDole*, 122 Wn.2d at 610.

¶29 Here, the trial court granted custody of MRE to Evans solely because he showed a change in *his own* circumstances. It made no negative findings regarding the Higginses' care (and Evans did not allege any) that would support modification of custody. This was a misapplication of the law and a clear abuse of the trial court's discretion.

---

[3] Evans did not appeal that initial award of custody to the Higginses.

50

We reverse and remand for entry of an order dismissing Evans's petition for modification of custody.

VAN DEREN, A.C.J., and ARMSTRONG, J., concur.