[No. 28919-2-III.   Division Three.   November 3, 2011.]

*In the Matter of the Custody of* T.L.

PAMELA J. LINK, *Respondent*, v. TIA R. LINK, *Appellant*.

*Pamela J. Link*, pro se.

*Terri D. Sloyer* (of *The Gaia Law Firm PLLC*) and *Bonne W. Beavers* (of *Center for Justice*), for appellant.

¶1 SIDDOWAY, J. — Tia Link appeals the summary denial of her motion to regain custody of her son, T.L., from Tia's

mother, to whom Tia relinquished custody during a time she was struggling with substance abuse. Tia argues that because she relinquished custody of T.L. by agreement and no contested hearing has ever found that she is an unfit parent or that her custody of T.L. would be an actual detriment to him, the court below should not have conditioned her right to a hearing on the difficult threshold showing required of a parent who previously lost custody to a nonparent on the merits. We agree that the procedural and substantive hurdles to modifying a custody decree provided by RCW 26.09.260(1) and (2) and .270 are unconstitutional as applied to the facts of this case. We reverse the order of dismissal and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL BACKGROUND

¶2 In February 2007, Pamela Link filed, pro se, a petition for custody of her grandson T.L., then age 6. Tia Link, Pamela's[1] daughter, is T.L.'s mother. Tia originally resisted her mother's petition, pro se. But in December 2007 Tia filed a joinder in her mother's petition. She contends that she did so because she was struggling with substance abuse and felt that the best situation for T.L. at the time was for him to live with Pamela. In the handwritten explanation included in her joinder, Tia stated in part, "My mother and I have reconciled. I want my mother to have temporary custody. She has agreed to let me have him when I'm stable." Clerk's Papers (CP) at 2.

¶3 On February 19, 2008, the trial court entered a final residential schedule, findings of fact, conclusions of law, and a nonparental custody decree in favor of Pamela. The decree granted Pamela's petition for custody of T.L. Neither the decree nor the findings or conclusions stated that the custody or residential schedule was temporary or subject to modification on any future event or contingency.

---

[1] We refer to Pamela and Tia Link by their first names for clarity. We intend no disrespect.

¶4 Tia represents in this appeal that the final documents were all prepared by Pamela and entered by consent. Most of their form and content suggests this was the case. The residential schedule did not impose any restrictions on Tia's contact with T.L. and provided visitation for Tia every other weekend, alternating visitation on holidays, and one month's visitation during the summer. While each of the final documents indicates that it was presented by Pamela, all include Tia's signature, either in the section of the forms reserved for joint presentment or for approval. The basis for the findings set forth in the findings of fact and conclusions of law is not identified as agreement or default, however, but as "trial," attended by Pamela and Tia. CP at 12. We have not been provided with any transcript of any trial proceedings and Pamela has not disputed Tia's representation that there was no contested hearing. Given the many indications that the findings, conclusions, and decree were agreed rather than the result of a trial, the lack of any record of trial proceedings, and the absence of any disagreement by Pamela, we assume this was the case.

¶5 Almost a year later, Tia filed a motion for an order to show cause seeking to hold her mother in contempt for changing residence without providing notice or contact information, preventing Tia from visiting T.L. for eight months. A court commissioner found Pamela in contempt and ordered her to provide make-up time for Tia's lost visitation. The commissioner denied Tia's request that Pamela be required to relinquish custody as a result of the violation; courtroom minutes indicate that he instead noted that Tia "may motion the Court for a modification" of the custody decree. CP at 200.

¶6 Tia thereafter filed a petition to modify the custody decree and residential schedule. Her supporting declaration identified changes she claimed to have made to improve her health, living situation, and financial security as well as the ways in which T.L.'s quality of life had deteriorated as a result of Pamela's alleged lack of care. She argued that

because she had joined in her mother's petition for custody on the basis that Pamela receive "temporary custody" and "agreed to let me have [T.L.] when I'm stable," she should not be required to demonstrate the "adequate cause" statutorily required to obtain a modification hearing. Alternatively, she contended that she had demonstrated adequate cause to modify the custody decision.

¶7 A court commissioner summarily denied Tia's petition, for failure to demonstrate adequate cause for a modification hearing. In delivering his oral ruling, the commissioner acknowledged that for a parent who has never lost custody in a contested proceeding, there is an incongruity between two statutes: on the one hand, RCW 26.10.100, which imposes a heightened standard before a nonparent is awarded custody of a child over a parent's objection; and on the other, the process and standards for modification that chapter 26.10 RCW incorporates from RCW 26.09.260 and .270, which present a significant obstacle for a parent seeking to have custody of a child restored. The commissioner observed:

> The difficulty with the legal structure in a situation like this is the statutes seem to indicate that once the placement is made it becomes essentially permanent. And the—and changes in the circumstances of the natural parent become irrelevant. . . .
>
> There seems to be a bit of ambivalence at the Court of Appeals level where there's some thought that a [chapter 26.10 RCW] decree is perhaps more of a temporary placement. And then a natural parent can petition to recover custody of the child once their parenting disability has resolved itself. There's some language to that effect in the Court of Appeals decision.[2]

---

[2] Tia had argued from *In re Marriage of Allen*, 28 Wn. App. 637, 646, 626 P.2d 16 (1981) (while "best interests of the child" standard under predecessor provision RCW 26.09.190 (1973) is properly applied between parents, a more stringent balancing test is required to justify awarding custody of a child to a nonparent when a parent also seeks custody). Report of Proceedings (Feb. 9, 2010) at 5. It is not clear whether the trial court's comments refer to *Allen* or to another of the appellate decisions discussed below.

It's really unclear where the law is headed with respect to that. So potentially any one of these cases is going to be a good case to appeal.

Report of Proceedings (RP) (Feb. 9, 2010) at 12-13.

¶8 Tia moved the superior court to revise the commissioner's order. But the superior court declined, noting that "this type situation falls in a gap that properly should be addressed by the legislature." RP (Mar. 4, 2010) at 18. It agreed with the commissioner's decision that Tia had not shown adequate cause for a hearing under the applicable statute and affirmed denial of the petition for modification.

¶9 Tia timely appealed.

## ANALYSIS

### I

¶10 hapter 26.09 RCW provides the process and standards for determining how residential time and decision-making for minor children will be allocated between parents in the event of separation or divorce. It reflects legislative policy that parenting plans addressing these matters should be carefully thought out before being entered and should anticipate and provide for a child's changing needs as the child grows and matures, "in a way that minimizes the need for future modifications." RCW 26.09.184(1)(c).

¶11 Under RCW 26.09.260(1), a court may not make a major modification to a parenting plan or custody decree unless a substantial change has occurred in the circumstances of the child or the nonmoving party and the modification is necessary to serve the best interests of the child. In addition, RCW 26.09.260(2) provides that in applying these standards, the residential schedule of the decree or parenting plan shall be retained unless (a) the parents agree to the modification, (b) the child has been integrated into the petitioner's family with the consent of

the other parent, (c) the child's present environment is detrimental, or (d) the court has found the nonmoving parent in contempt of court.

¶12 Finally, in order to secure a hearing, a party moving to modify a custody decree or parenting plan must submit with its motion, "an affidavit setting forth facts supporting the . . . modification." RCW 26.09.270. The court must deny the motion without a hearing unless the affidavit establishes "adequate cause." *Id.* "Adequate cause" means, at the very minimum, "evidence sufficient to support a finding on each fact that the movant must prove in order to modify." *In re Marriage of Lemke*, 120 Wn. App. 536, 540, 85 P.3d 966, *review denied*, 152 Wn.2d 1025 (2004). The primary purpose for the requirement is to prevent movants from harassing nonmovants by obtaining a useless hearing. *In re Marriage of Adler*, 131 Wn. App. 717, 724, 129 P.3d 293 (2006) (citing *Lemke*, 120 Wn. App. at 540), *review denied*, 158 Wn.2d 1026 (2007).

¶13 A separate chapter, chapter 26.10 RCW, addresses custody determinations where a nonparent seeks custody or visitation. While RCW 26.10.100 provides that "[t]he court shall determine custody in accordance with the best interests of the child," it has long been held to require that a third party seeking custody from a parent demonstrate that the parent is unfit or that placement of the child with the otherwise fit parent will result in actual detriment to the child's growth and development. *In re Custody of Stell*, 56 Wn. App. 356, 365, 783 P.2d 615 (1989); *In re Custody of Shields*, 157 Wn.2d 126, 144, 136 P.3d 117 (2006); *In re Parentage of M.F.*, 168 Wn.2d 528, 533, 228 P.3d 1270 (2010).

¶14 While chapter 26.10 RCW imposes this heightened burden for a nonparent seeking custody or visitation in the first instance, it provides at RCW 26.10.190(1) that trial courts shall hear and review petitions for modification of custody decrees "pursuant to chapter 26.09 RCW." As applicable here, RCW 26.09.260 required that Tia establish, on

the basis of facts that had arisen since the prior decree or were unknown to the court at the time of the prior decree, that a substantial change had occurred in T.L.'s or Pamela's circumstances; that the modification was in T.L.'s best interest and necessary to serve his best interest; and, relying on RCW 26.09.260(2)(c), that T.L.'s "present environment is detrimental to the child's physical, mental, or emotional health and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child." To secure a hearing, RCW 26.09.270 required that she demonstrate adequate cause.

¶15 Tia does not assign error on appeal to the finding that she did not demonstrate adequate cause. Instead, she assigns error to the trial court's determination that a showing of adequate cause was required to obtain a hearing given the circumstances of the initial decree. Alternatively, she argues that RCW 26.10.190 and incorporated provisions RCW 26.09.260(1) and (2) and .270 are unconstitutional when applied to a parent who has never been shown to be unfit and where it has never been established that the child's residence with the parent will result in actual detriment to the child's growth and development.

II

¶16 We first address Tia's argument that in light of her intent that Pamela's custody of T.L. be temporary, the superior court should have treated the custody decree and residential schedule entered in February 2008 as deferring a final custody decision to a later date, thereby excusing her from the obligation to demonstrate adequate cause and from the substantive standards for modification provided by RCW 26.09.260(1) and (2). She relies on *In re Marriage of Possinger*, 105 Wn. App. 326, 19 P.3d 1109, *review denied*, 145 Wn.2d 1008 (2001) and *Adler*, 131 Wn. App. 717. We review a trial court's decision regarding a child's placement for abuse of discretion. *In re Welfare of B.R.S.H.*, 141 Wn.

App. 39, 46, 169 P.3d 40 (2007). A trial court abuses its discretion when it applies an incorrect legal standard. *Id.* Tia's argument that the principles established in *Possinger* and *Adler* extend to the facts of this case raises an issue of law that we review de novo. *In re Marriage of Kastanas*, 78 Wn. App. 193, 197, 896 P.2d 726 (1995).

¶17 In *Possinger*, which involved a parenting plan for the five-year-old daughter of parents going through a divorce, the trial court expressed concern that it was " 'very, very difficult' " to arrive at a parenting plan where the wife was then working a night shift but seeking a change to work days, the husband was a first year law student unsure whether he would succeed with his studies, and both were considering relocating. 105 Wn. App. at 329. Given the uncertainty of so many matters bearing on the custody decision, the court's solution was to enter a parenting order that prescribed a one-year residential schedule, reserved decision on the residential schedule until the child began first grade, reserved jurisdiction of the issue, and provided that no presumption would be drawn from the temporary schedule. On appeal, the court's order was found to be a valid exercise of equitable power, effectively deferring the court's authority to decide custody applying the criteria provided by RCW 26.09.187. The decision, thus deferred, was held not to be a modification and therefore was not subject to the standards governing modification proceedings.

¶18 In *Adler*, Division One of this court extended the opportunity for such deferral, holding that a divorcing couple could defer entry of a binding custody decision and residential schedule by agreement. The husband and wife in *Adler* agreed that for one year either could request a review of the terms of the initial parenting plan without showing a substantial change in circumstances and stipulated, in the event of a request made within the one-year period, that adequate cause would exist for a hearing. The husband requested such review; it resulted in a modifica-

tion; and the wife was disappointed by the result. She challenged the modification, arguing, in part, that the requirements of a substantial change in circumstances and threshold showing of adequate cause serve public policy and the interests of affected children and should not be subject to waiver by the parties. The court disagreed, holding that the children's interests were protected by the remaining substantive standards of RCW 26.09.260 to be applied in the modification proceeding.

¶19 The problem with Tia's reliance on *Possinger* and *Adler* is that the trial court's findings, conclusions, residential schedule, and decree do not provide that the custody determination or schedule is temporary, that anything is being deferred for later decision, or that the adequate cause standard was waived. She relies instead on the handwritten notes in her December 2007 joinder in the petition. That joinder is only one of a number of documents Tia submitted or signed in the proceedings on her mother's petition and is the only one that suggests that temporal or other qualifications on Pamela's rights were anticipated. As Pamela pointed out in proceedings below, Pamela did not sign or join in Tia's statements. While the findings prepared by Pamela provide, as to "best interest of the child," that "Tia Link has not been stable or responsible enough *at this time* to meet [T.L.'s] needs" and "Tia Link agrees that she is unable to care for [T.L.] *at this time*," CP at 15-16 (emphasis added), this is not enough to indicate that the custody determination is being deferred or that standards for future modification have been waived.

¶20 For deferral under *Possinger*, it is the court that must exercise its equitable power to postpone decision on a final parenting plan. Under *Adler*, a stipulation of all affected parties to waive the showing of substantial change in circumstances and adequate cause was required to be clear. Either way, the basis for excusing showings otherwise required by statute must clearly appear in the court's findings, conclusions, and/or its decree. In this case, those

documents reserve nothing for later determination. Tia has not demonstrated any agreement or determination in the prior proceedings that excuses her from meeting the substantive requirements of RCW 26.09.260 or demonstrating adequate cause.

## III

¶21 Tia makes an alternative, constitutionally grounded argument for the first time on appeal. She admits that the argument was not raised below other than conclusorily and in passing.[3] But she argues that the application to her of the substantive and procedural requirements for modification provided by RCW 26.09.260(1) and (2) and .270 is manifest error affecting a constitutional right eligible for appeal under RAP 2.5(a).

¶22 RAP 2.5(a) generally provides that issues may not be raised for the first time on appeal, but RAP 2.5(a)(3) excepts manifest error affecting a constitutional right. "Manifest" in RAP 2.5(a)(3) requires a showing of actual prejudice. *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009). To demonstrate that an error qualifies as manifest constitutional error, an appellant must " 'identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial.' " *Id.* at 98 (alteration in original) (quoting *State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007)).

¶23 The constitutional error alleged by Tia is the trial court's failure, in affirming the summary denial of her petition to modify, to take into consideration her liberty interest in the care and custody of T.L. She argues that the modification statute, as applied to the facts of her case, is unconstitutional. When a statute is held unconstitutional "as applied," its application in a similar context is prohib-

---

[3] Tia's lawyer argued below, "We did not brief in its detail the constitutionality of how that—the provisions would be applied in this case. But I have reason to believe that there's a likely issue there." RP (Mar. 4, 2010) at 6.

ited but the statute is not totally invalidated. *City of Redmond v. Moore*, 151 Wn.2d 664, 669, 91 P.3d 875 (2004). This differs from a facial attack, in which a plaintiff must establish that no set of circumstances exists under which a statute would be valid or that the statute lacks any plainly legitimate sweep, although which standard applies in a typical case is a matter of continuing dispute. *United States v. Stevens*, 550 U.S. 460, 130 S. Ct. 1577, 1587, 176 L. Ed. 2d 435 (2010). The interpretation of a statute and the determination of whether a statute violates the United States Constitution are issues of law that we review de novo. *In re Parentage of C.A.M.A.*, 154 Wn.2d 52, 57, 109 P.3d 405 (2005).

¶24 The United States and Washington Supreme Courts have long recognized parents' fundamental rights to the care and custody of their children. The "rights to conceive and to raise one's children have been deemed 'essential,' 'basic civil rights of man' . . . . 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'" *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972) (citations omitted) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923); *Skinner v. Oklahoma ex rel. Williamson*, 316 U.S. 535, 541, 62 S. Ct. 1110, 86 L. Ed. 1655 (1942); *Prince v. Massachusetts*, 321 U.S. 158, 166, 64 S. Ct. 438, 88 L. Ed. 645 (1944)). The rights have been recognized as protected by the due process clause of the Fourteenth Amendment, the equal protection clause of the Fourteenth Amendment, and the Ninth Amendment. *Id.* State interference with the parent's right to rear her or his children is subject to strict scrutiny, "justified only if the state can show that it has a compelling interest and such interference is narrowly drawn to meet only the compelling state interest involved." *In re Custody of Smith*, 137 Wn.2d 1, 15, 969 P.2d 21 (1998), *aff'd sub nom. Troxel v. Granville*, 530 U.S. 57, 120 S. Ct.

2054, 147 L. Ed. 2d 49 (2000). Protecting a parent's right to rear her or his child has sometimes required Washington and federal courts to read special protections into custody and visitation statutes when a parent's interest conflicts with that of a nonparent. In other cases, the need to protect the parent's right has led to such statutes being found unconstitutional, facially or as applied.

¶25 *In re Marriage of Allen*, 28 Wn. App. 637, 626 P.2d 16 (1981) was an early case in which a custody statute was construed to require special protections for a parent resisting a nonparent's request for custody. The court reasoned that while a pure "best interest of the child" standard—the standard according to which custody of a child was to be determined under former RCW 26.09.190 (1973)—could apply in a custody dispute between parents, a more stringent standard was required where a nonparent sought to wrest custody from a parent. The court held that a nonparent could overcome the parent's rights only by showing either parental unfitness or actual detriment to the child. In 1987, the legislature "reenact[ed] and continue[d] the law relating to third-party actions involving custody of minor children" through a separate chapter, chapter 26.10 RCW, which Washington courts construed as incorporating *Allen*'s parentally protective "best interest of the child" standard. RCW 26.10.010 (expressing legislative intent); *Stell*, 56 Wn. App. at 365. *In re Custody of R.R.B.*, 108 Wn. App. 602, 613, 31 P.3d 1212 (2001), *review denied*, 151 Wn.2d 1017 (2002), held that it is the construction of RCW 26.10.100 to require this heightened standard that saves the nonparental custody provision from constitutional challenge. In *Shields*, the Washington Supreme Court agreed, holding that the heightened standard for obtaining nonparental custody from a parent satisfies strict scrutiny, characterizing the standard recognized in *Allen* as substantial, and as one that "a nonparent will generally be able to meet . . . in only 'extraordinary circumstances.' " 157 Wn.2d at 145 (quoting *Allen*, 28 Wn. App. at 649). It also held that

to pass constitutional muster, the nonparent bears the burden of proof under the heightened standard. *Id.* at 146.

¶26 Several Washington nonparental *visitation* statutes have not fared so well, and have been found unconstitutional, facially or as applied, for failing to accord deference to a parent's decisions. In *Smith*, our Supreme Court found RCW 26.10.160(3) and former RCW 26.09.240 (prior to its 1996 amendment) to be facially unconstitutional; both provided that any nonparent could petition the court for visitation rights at any time and that a court could order visitation " 'when visitation may serve the best interest of the child.' " 137 Wn.2d at 7 (quoting RCW 26.10.160(3); former RCW 26.09.240). *Smith* held that the State may constitutionally interfere with the right of parents to rear their children only to prevent harm or potential harm to a child, a standard not imposed by the challenged statutes. The United States Supreme Court, which granted certiorari in a companion case, *Troxel*, affirmed on more narrow grounds, holding that where a fit parent's decision to deny third party visitation is subject to judicial review, "the court must accord at least some special weight to the parent's own determination." 530 U.S. at 70. Several years after *Smith* and *Troxel*, our Supreme Court held in *C.A.M.A.*, 154 Wn.2d at 61, that even after Washington's visitation statute was amended in 1996 to presume that a grandparent's visitation was in a child's best interest only if a substantial grandparent-grandchild relationship was shown, the statute remained unconstitutional because it allowed a court to order visitation over the objection of a parent without a showing that denying visitation would harm the child. " 'Short of preventing harm to the child, the standard of "best interest of the child" is insufficient to serve as a compelling state interest overruling a parent's fundamental rights.' " *Id.* at 64 (quoting *Smith*, 137 Wn.2d at 20).

¶27 Where the heightened "best interest" standard as construed by *Allen* is applied, Tia concedes that a parent's liberty interest is ordinarily highly protected in the initial

custody action brought by a nonparent. It is through that process, if contested, that the parent's constitutional rights are taken into account. Tia concedes that when a parent's liberty interest is protected in the initial custody action, modification may legitimately require a high threshold, presuming that a further change of custody is detrimental to the child. Br. of Appellant at 24; *B.R.S.H.*, 141 Wn. App. at 49. But where a parent's liberty interest was *not* protected in the initial custody action, Tia argues that it must be recognized in the modification proceeding.

¶28 We agree. The trial court heard no evidence from which it could, or did, make findings that Tia was an unfit parent or that Tia's custody of T.L. would result in actual detriment to him. And while we do not suggest that a parent cannot stipulate to facts that would bind her or him to an adverse finding of unfitness or actual detriment (thereby requiring that any later request by the parent for modification satisfy the substantive and procedural requirements of RCW 26.09.260 and .270) the record here does not support any such stipulation by Tia. The findings on "best interest" drafted by Pamela and entered by the court were not clearly adopted by Tia. Nor, for that matter, do they establish actual detriment. They state that "[T.L.] has been with Pamela Link for most of his life and is secure and safe. He is currently emotionally and mentally stable. And happy and healthy." CP at 15. They further state that T.L. has not been in Tia's physical custody since January 2006 because "Tia Link has not been stable or responsible enough at this time to meet [T.L.'s] needs." *Id.* Finally, they state that Tia is not a suitable custodian because "Tia Link agrees that she is unable to care for [T.L.] at this time." CP at 16. The fact that a parent has relinquished a child's care to grandparents for an extended period of time, by agreement, does not establish that returning custody to the parent will result in actual detriment to a child. *See In re Custody of E.A.T.W.*, 168 Wn.2d 335, 227 P.3d 1284 (2010); *and see C.A.M.A.*, 154 Wn.2d at 66 (visitation statute

presuming grandmother's visitation was in child's best interest was facially unconstitutional, notwithstanding that grandparents had raised child for much of her life with father's agreement). The modification standards and process provided by RCW 26.09.260(1) and (2) and .270 interfere with Tia's right to rear her son, and they fail strict scrutiny analysis where Pamela has never demonstrated that Tia is an unfit parent or that placing T.L. with Tia will result in actual detriment to his growth and development. In a case such as this it is constitutional error to require a parent seeking restored custody of her or his child to satisfy the requirements of RCW 26.09.260 and .270; instead, the placement of the child must be decided applying the parentally protective "best interest" standard of RCW 26.10.100.

¶29 Having found constitutional error, we still need not consider it for the first time on appeal unless it is manifest. The focus of the actual prejudice requirement is on whether the error is so obvious on the record that the error warrants appellate review. *O'Hara*, 167 Wn.2d at 99-100. While the commissioner and trial court did not have the benefit of Tia's full articulation of her constitutional argument or our opportunity to review the controlling authority, both the commissioner and the court recognized the incongruity between the protections of parents' rights provided elsewhere and the fact that the modification process and standards of RCW 26.09.260 and .270 fail to consider them at all. The error clearly affected Tia's rights in seeking a modification of T.L.'s placement by imposing a standard she was unable to meet and preventing her from obtaining a hearing in which a presumption of her fitness would be taken into account. Pamela makes no argument that the error was harmless.

¶30 Tia has requested an award of attorney fees and costs under RCW 26.10.080. We decline to award them.

¶31 We reverse the trial court's order denying Tia's motion to revise the commissioner's ruling and remand for proceedings consistent with this opinion.

KORSMO, A.C.J., and BROWN, J., concur.