# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of:<br><br>AMY E. COLE,<br><br>                        Appellant,<br><br>    v.<br><br>MARK L. COLE,<br><br>                        Respondent. | No. 51013-8-II<br><br><br><br><br>UNPUBLISHED OPINION |

MELNICK, P.J. — Following a petition to modify a final parenting plan, the trial court established a new one. In so doing, it ordered that Amy Cole and Mark Cole[1], her ex-husband, have joint decision-making over their three children. Amy appeals. She acknowledges that her appeal is timely only as to the denial of a meritless CR 60(b) motion and untimely as to all other issues in the case.

Because this case presents extraordinary circumstances resulting in a gross miscarriage of justice, we exercise our discretion under RAP 18.8 to decide Amy's argument that the trial court abused its discretion by ordering joint decision-making after it found that Mark engaged in a history of domestic violence. On that issue, we reverse. We otherwise affirm.

---

[1] To avoid confusion, we refer to Amy and Mark by their first names. We intend no disrespect.

FACTS

Amy and Mark married in July 2005 and separated in August 2012. In 2014, when they dissolved their marriage, their three children were ages seven, three, and two.

At the conclusion of the dissolution trial, in March 2014, the court issued a final parenting plan which mandated: "A. Father shall meet with Dr. Landon Poppleton to address all issues of domestic violence. This must be completed prior to commencement of father's summer residential time. B. Father must have a certified evaluation from a Washington provider regarding domestic violence and follow through with any treatment recommendations." Clerk's Papers (CP) at 6.

As to decision-making for the children, the final parenting plan stated, "[t]he court is concerned about issues of domestic violence. Until the court hears from a domestic violence counselor/evaluator, mother will have sole decision-making." CP at 7. Once Mark completed his meeting with Poppleton and completed domestic violence treatment, the order stated "major decision-making shall become joint." CP at 7. The court that entered the plan stated it had given Mark "a break" by declining to restrict Mark's access to the children under RCW 26.09.191.[2, 3] CP at 424.

---

[2] Since the trial court's decision in this case, the legislature has enacted substantial changes to many statutes in an effort to address domestic violence. LAWS OF 2019, ch. 263. These amendments impacted many statutes cited throughout this opinion, including RCW 26.09.191. We cite to the versions of the statutes in effect at the time of the trial court's decision.

[3] RCW 26.09.191 provides both mandatory and discretionary guidance to trial courts for dealing with a parent's history of domestic violence when creating a parenting plan. We discuss its impacts on this case further below.

In August 2015, Amy alleged that Mark had committed ongoing physical abuse of the children. She petitioned to modify the final parenting plan. She alleged that Mark's abuse presented a substantial change of circumstances, causing the existing parenting plan to become detrimental to the children's physical, mental, or emotional health.

The court appointed Josephine Townsend as Guardian Ad Litem (GAL) in November. She interviewed a number of people, including Amy and Mark. She also observed how each parent interacted with the three children. Townsend filed her GAL report in April 2016. She concluded that both Amy and Mark were pleasant and cooperative and that they both provided a nurturing and loving environment to their children. Townsend recommended that all three children spend equal residential time with both parents and that Amy and Mark have joint decision-making. In August 2016, the trial court entered a temporary parenting plan imposing equal residential time and joint decision-making on recommendation of the GAL.

The case proceeded to trial. Townsend testified that she believed the temporary parenting plan was working and that her recommendation remained the same. She looked at her notes and testified she "remember[ed] specifically" speaking with Amy's domestic violence victim advocate, a family friend, and other people. Report of Proceedings (RP) (Feb. 13, 2017) at 38. She provided the dates of the interviews. Amy sought to call some of these witnesses in rebuttal to testify they had not talked to the GAL; however, the trial court would not allow the testimony. Nevertheless, the parties stipulated that, contrary to her testimony, Townsend had not talked to these individuals.

As to domestic violence committed by Mark since the 2014 final order, Townsend testified she was aware of a "thumbprint" found on one of the children. RP (Feb. 13, 2017) at 56. She said:

> There was a thumbprint that was found on [one of the children], I recall that, in 2014. And I know that it was being appealed by the father. That it was reported that—I believe, that they thought that it was, you know, from grabbing by the hand. I know that the—his wife was not interviewed. There was—there was a dispute over how it was investigated and how it came to be.

RP (Feb. 13, 2017) at 56. Townsend said she had heard it was a founded report of abuse from Amy and it did not change her recommendation. Townsend submitted an undated supplemental report acknowledging that Mark appealed the CPS "founded" finding of abuse. She added her opinion that no indications demonstrated that increased time with him would adversely affect the children. Other than Townsend's testimony on these points, no trial testimony or exhibit in the record on appeal suggests that Mark committed any act of violence against the children since the divorce and the findings in the 2014 parenting plan.[4]

After trial, the court found that the children had "two strong, nurturing and loving parents" and that they "appear[ed] to be thriving under the current residential schedule." CP at 497. As to the domestic violence issues, the court noted,

> In the past, [Amy] experienced significant domestic violence at the hands of [Mark] to the extent that the trial judge ordered him into treatment. The court does not take the concerns of a domestic violence survivor lightly, however the court is satisfied that [Mark] underwent sufficient counseling to address the situation.

---

[4] Our decision is based on the trial court's finding of a history of domestic violence by Mark against Amy. Inadequacies in our record make it difficult to determine the trial court's findings and conclusions as to the child abuse allegations in Amy's modification petition. To the extent Mark's ongoing violence against the children presents a substantial change of circumstances, our opinion does not preclude Amy from filing a new petition to modify the parenting plan.

CP at 498. The court concluded that the previously ordered temporary parenting plan was in the best interests of the children and adopted it as the final parenting plan. It entered a final order and parenting plan identical to the temporary plan, maintaining equal residential time and joint decision-making.

Several months after she testified, Townsend submitted a supplemental report to the court acknowledging an error in her testimony. She stated she had mistakenly read from notes she had received from a GAL who had been appointed prior to the original trial in 2013. Townsend attached the previous GAL's notes that she had been referencing and they clearly indicate that interactions with both Priebe and Carroll had taken place in spring of 2013, years before Townsend had been assigned to the case.

Amy moved for reconsideration under CR 59 and for vacation of the judgment under CR 60(b). The trial court denied both motions and ordered Amy to pay Mark $500 in attorney fees. Within 30 days of the denial of her CR 60(b) motion, but more than 30 days after the denial of her motion for reconsideration, Amy appealed.

ANALYSIS

I.    TIMELINESS OF APPEAL

Amy acknowledges that her appeal was untimely as to the substantive issues in this case. She seeks to use the timely appeal of the denial of her CR 60(b) motion to correct alleged "irregularities" in earlier proceedings.[5] We agree that the appeal was untimely as to the substantive issues in the case. However, we exercise our discretion under RAP 18.8 to consider Amy's arguments as to the trial court's joint decision-making order.

---

[5] Amy does not allege the trial court erred by denying any claim for relief raised in her CR 60(b) motion.

A party is allowed 30 days in which to file a notice of appeal. RAP 5.2(a). "This 30-day time limit can be extended due to some specific and narrowly defined circumstances." *Schaefco, Inc. v. Columbia River Gorge Comm'n*, 121 Wn.2d 366, 367, 849 P.2d 1225 (1993). Filing of certain post-trial motions, including motions for reconsideration, may extend this deadline. *Schaefco*, 121 Wn.2d at 367; RAP 5.2(e). Motions to vacate judgment under CR 60(b) are not among the list of motions that extend the deadline to appeal. RAP 5.2(e). Amy represented herself in the trial court. Trial courts "must hold pro se parties to the same standards to which [they] hold[] attorneys." *Edwards v. Le Duc*, 157 Wn. App. 455, 460, 238 P.3d 1187 (2010).

The court filed the final parenting plan, its final order in this case, on June 23, 2017. Amy filed a timely CR 59 motion for reconsideration, which the court denied on August 15. While her CR 59 motion was pending, Amy filed her CR 60(b) motion on July 7 and the trial court denied it on September 15. The 30-day window to file her notice of appeal from the parenting plan began running on August 15 when the trial court denied her motion for reconsideration. RAP 5.2.

Amy filed her notice of appeal on October 10, 2017, within 30 days of the denial of her CR 60(b) motion, but more than 30 days after the court denied her CR 59 motion for reconsideration. Amy's appeal is untimely as to each issue she raises in her brief.[6]

However, RAP 18.8(a) provides that this court may "on its own initiative or on motion of a party, waive or alter the provisions of any of these rules and enlarge or shorten the time within which an act must be done in a particular case in order to serve the ends of justice." "Our discretion is subject to RAP 18.8(b), which provides that we will 'only in extraordinary circumstances and to prevent a gross miscarriage of justice extend the time within which a party must file a notice of

---

[6] To the extent Amy contends the trial court abused its discretion by denying her CR 60(b) motion, her arguments are based on issues unrelated to the trial court denying that motion.

appeal.'" *In re Custody of Z.C.*, 191 Wn. App. 674, 698, 366 P.3d 439 (2015) (quoting RAP 18.8(b)). "The decision whether to extend time for appeal 'is determined by the appellate court to which the untimely notice, motion or petition is directed.'" *Z.C.*, 191 Wn. App. at 700 (quoting RAP 18.8(b)).

In this case, the trial court ordered joint decision-making for Amy and Mark's three children, despite its express finding of a history of domestic violence. As discussed further below, the trial court's ruling is a clear violation of the mandates of RCW 26.09.191(1). Upholding this ruling because Amy, representing herself at the trial court, misunderstood which post-trial motions extend appellate deadlines would create a gross miscarriage of justice. We reject the rest of Amy's arguments as untimely, but we exercise our discretion under RAP 18.8 to consider her argument that the trial court abused its discretion by ordering joint decision-making.[7]

II.     MODIFICATION OF PARENTING PLAN

Amy contends that the trial court abused its discretion by modifying the parenting plan to impose joint decision-making despite findings of domestic violence.[8] We agree.

---

[7] In exercising our discretion under RAP 18.8, we are also mindful that, in setting the original parenting plan, the court gave Mark "a break" by declining to impose formal restrictions on Mark's access to the children even though it found a history of domestic violence and even though it ordered Mark into domestic violence treatment. CP at 424.

[8] Amy also alleges that the trial court abused its discretion by failing to order restrictions on Mark's residential time despite its finding of a history of domestic violence. Where a trial court expressly finds that contact between a parent and child will not cause physical, sexual, or emotional abuse or harm to the child, and that the probability of the parent's harmful or abusive conduct is remote such that limiting residential time would not be in the child's best interests, it may choose not to limit residential time under RCW 26.09.191(2)(a). RCW 26.09.191(2)(n). A similar exception does not exist for RCW 26.09.191(1), which forbids the trial court from ordering joint decision-making given a finding of a history of domestic violence. We exercise our discretion under RAP 18.8 to consider only Amy's joint decision-making argument.

"[C]hapter 26.09 RCW provides the process and standards for determining how residential time and decision-making for minor children will be allocated between parents in the event of separation or divorce." *In re Custody of T.L.*, 165 Wn. App. 268, 274, 268 P.3d 963 (2011). The best interests of the child is the standard by which the court should determine and allocate parental responsibilities. RCW 26.09.002. The court should "plac[e] the best interest of the child above all other interests." *In re Marriage of Littlefield*, 133 Wn.2d 39, 61, 940 P.2d 1362 (1997).

A trial court wields broad discretion when fashioning a permanent parenting plan and we review a trial court's parenting plan for an abuse of discretion. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012).

Restrictions on a parent's decision-making is mandatory if the trial court finds that the parent has "a history of acts of domestic violence." RCW 26.09.191(1); *In re Parenting and Support of L.H.*, 198 Wn. App. 190, 194, 391 P.3d 490 (2016). Domestic violence in this context means:

> (a) Physical harm, bodily injury, assault, or the infliction of fear of imminent physical harm, bodily injury or assault, between family or household members; (b) sexual assault of one family or household member by another; or (c) stalking . . . of one family or household member by another family or household member.

RCW 26.50.010(3). "Family or household member" includes spouses, former spouses, and persons who have a biological or legal parent-child relationship. RCW 26.50.010(6).

In *L.H.*, the trial court found that there "ha[d] been prior domestic violence [and that] there ha[d] been some other issues here" and ordered the father to complete a domestic violence assessment. 198 Wn. App. at 193. However, the court "declined to enter a finding that [the father]

8

had a history of domestic violence" because it stated it would "almost hate to put [such findings] in there because [it would] hate to have this record follow him around like some ghost." *L.H.*, 198 Wn. App. at 193. The court told the parties to "[g]et past the [domestic violence]" because "once it gets in writing, as you can see with your prior record, you don't get to erase it." *L.H.*, 198 Wn. App. at 193.

The court concluded that the trial court had abused its discretion by acknowledging the presence of domestic violence but refusing to enter a finding "to protect [the father] from collateral consequences." *L.H.*, 198 Wn. App. at 194-95. The court reversed and remanded "for entry of a finding of a history of domestic violence and a parenting plan that complies with RCW 26.09.191." *L.H.*, 198 Wn. App. at 195.

In this case, the trial court found that both Amy and Mark were "strong, nurturing and loving parents." CP at 497. However, it also found that, "[i]n the past, [Amy] experienced significant domestic violence at the hands of [Mark] to the extent that the trial judge ordered him into treatment."[9] CP at 498. Although it did "not take the concerns of a domestic violence survivor lightly," the court said it was "satisfied that [Mark] underwent sufficient counseling to address the situation." CP at 498. The court then ordered joint decision-making in the final parenting plan.

When a court finds a "history of domestic violence," limitations on a parent's decision-making and residential time are mandatory under RCW 26.09.191. *L.H.*, 198 Wn. App. at 194.

---

[9] Mark contends that "a single act" of physically injuring a child does not constitute a "history of acts of" domestic violence under RCW 26.09.191. Br. of Resp't at 20. The trial court's order did not refer to any violent act against the children, but to the violence Mark committed against Amy. A finding that Amy "experienced significant domestic violence at the hands of" Mark is a finding of a history of domestic violence triggering the requirements of RCW 26.09.191. CP at 498.

The court in this case specifically found that Mark had a history of domestic violence, yet ordered joint decision-making with no limitations. If the court "expressly" found that contact between Mark and the children would not cause harm and the probability of harmful or abusive conduct was "so remote" that limitations would not be in the children's best interest, it may have declined to impose limitations on residential time. RCW 26.09.191(2)(n). Even in that case, RCW 26.09.191(1) would still have prohibited the trial court from ordering mutual decision-making. By imposing joint decision making in light of this finding, the court abused its discretion and we remand for the trial court to issue a parenting plan in compliance with RCW 26.09.191.

## ATTORNEY FEES

Mark contends that Amy's appeal is frivolous and we should award him his reasonable attorney fees on appeal.

We may, on our own initiative or on motion of a party, order a party who files a frivolous appeal "to pay terms or compensatory damages to any other party who has been harmed." RAP 18.9(a). "Appropriate sanctions may include, as compensatory damages, an award of attorney fees and costs to the opposing party." *Yurtis v. Phipps*, 143 Wn. App. 680, 696, 181 P.3d 849 (2008). An appeal is frivolous where "it presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal." *Carrillo v. City of Ocean Shores*, 122 Wn. App. 592, 619, 94 P.3d 961 (2004).

Because Amy has prevailed on one issue, her appeal is not frivolous and we decline Mark's request for attorney fees.

## CONCLUSION

We reverse the trial court's parenting plan and remand for a new parenting plan compliant with RCW 26.09.191.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, P.J.

We concur:

Sutton, J.

Glasgow, J.